IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
APR - 4 2008
Apr 4, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

THOMAS CUNNINGHAM )
    plaintiff )
 ) NO 08C1605
 ) Judge: GOTTSCHALL
Vs )
 )
KANKAKEE COUNTY )
DETENTION CENTER et al. )
    defendant )

APR 0 4 2008

---

### DECLARATION

Judge This started over an intercalation in my face at KCDC. I have never Brought suit on any one ever and find myself in a bind. On March 27 2008 I was attacked by a sentenced inmate where I was designated to custody on the 23 floor for sentenced inmates. I am pre trial. (See) attached 60 AM Jor 2d #124. The Sentenced inmate next to my bunk, JASON TOLEN #13317-040 UNIT H sec B2 killed a man in front of me in the Library on our Library Hour. I suffered immediate eye burn 1st degree per medical staff and a possible broken finger. I was sited for Fighting (See) attached Incident Reports, both ORIGINAL PRIOR TO THIS I HAVE HAD A Spotless record at the non federal Holding facility KCDC and MCC.

Judge I am not a tear in your beer type of any act

Yours

Something is wrong here. There are over 100 inmates on 23 with sentences from life +10 to camp. My Declaration is for 2 Things —Motion to (Cort Order)

#1 Access to the Courts: prison officials may not erect any barriers that impede inmates access to the courts. / I don't have any of my law books and no access to the law library. I have no confidential reception of any legal mail outgoing or incoming. I have expressed in my last letter to the clerk that the Institution is opening my mail and loged by Lt Ewell that the Institution opened my mail 3-24-08 per Lt Ewell. "Not in font of Inmate" Kensu V. Haigh Lyman v. Duggee (87 F3d 172 6th Cir) 931 F2d 1465 11th Cir

#2 Access to A Typewriter and writing material. I have purchased typing ribbons and paper and have a current hand injury. at the least paper and pen. and a way to make copies with my copy card.

I Swear under Penalty of Purjury that the above declaration and Motion for Request and order is True, Date: 3-30-08

BP-A288.052　　　　　　　　　　　　INCIDENT REPORT　　　CDFRM
SEP 05
U.S. DEPARTMENT OF JUSTICE　　　　　　　　　　　　FEDERAL BUREAU OF PRISONS

## Part I - Incident Report

| 1. Institution: | MCC CHICAGO, ILLINOIS | | |
|---|---|---|---|
| 2. Inmate's Name<br>CUNNINGHAM, THOMAS | 3. Register Number<br>01293-424 | 4. Date of Incident<br>03/27/2008 | 5. Time<br>7:35 pm |
| 6. Place of Incident<br>UNIT "H" SECTION 2 | 7. Assignment<br>UNASSG | 8. Unit<br>"H" | |
| 9. Incident<br>FIGHTING | | 10. Prohibited Act Code(s)<br>201 | |

11. Description Of Incident (Date: 03/28/2008  Time: 11:30 am   Staff became aware of incident)
On Friday, March 28, 2008, at approx. 11:30 am, an investigation of fighting was conducted between inmates Cunningham #01293-424 and Hernandez, Juan #19531 424. While interviewing inmate Cunningham, inmate Cunningham did in fact admit to being involved in a physical altercation with inmate Hernandez. Inmate Cunningham admitted striking inmate Hernandez numerous times after inmate Hernandez threw a bowl of hot soup on him. Review of the CCTV shows inmate Cunningham striking inmate Hernandez.

| 12. Typed Name/Signature of Reporting Employee<br>B. Conrad, Lieutenant | 13. Date And Time<br>3/28/2008 12:00 pm | |
|---|---|---|
| 14. Incident Report Delivered to Above Inmate By<br>(Type Name/Signature)<br>W. Fialy/well | 15. Date Incident<br>Report Delivered<br>3-28-08 | 16. Time Incident<br>Report Delivered<br>12:00 pm |

## Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident

18. A. It is the finding of the committee that you:
　　___ Committed the Prohibited Act as charged.
　　___ Did not Commit a Prohibited Act.
　　___ Committed Prohibited Act Code(s) _____

　　B. ___ The Committee is referring the Charge(s) to the DHO for further Hearing.
　　C. ___ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is Based on Specific Evidence as Follows:

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHC finding inmate committed prohibited act)

21. Date And Time Of Action _____ (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

Chairman (Typed Name/Signature)　　Member (Typed Name)　　Member (Typed Name)

Original - Central File Record; Yellow - DHO; Blue - Inmate After UDC Action;
Pink - Inmate within 24 Hours Of Part I Preparation

(This Form May Be Replicated Via WP)　　　　　　Replaces BP-S288.052 Of MAY 94

BP-S308.052  ADMINISTRATIVE DETENTION ORDER  CDFRM
MAY 94
U.S. DEPARTMENT OF JUSTICE                              FEDERAL BUREAU OF PRISONS

```
                                                    MCC CHICAGO
                                                    Institution

                                 Date/Time:  03/27/08 8:00 PM
```

TO:      Special Housing Unit Officer

FROM:    LIEUTENANT K. SHIVERS, OPERATIONS LIEUTENANT

SUBJECT: Placement of INMATE CUNNINGHAM, THOMAS  Reg. No. 01293-424 , in Administrative Detention

```
_____ (a) Is pending a hearing for a violation of Bureau regulations;
   XXX    (b) Is pending investigation of a violation of Bureau regulations;
_____ (c) Is pending investigation or trial for a criminal act;
_____ (d) Is to be admitted to Administrative Detention
```

          _____ (1) Since the inmate has requested admission for protection;

     I hereby request placement in Administrative Detention for my own protection.

     Inmate Signature/Register No.: _____

     Staff Witness Printed Name Signature: _____

          _____ (2)  Since a serious threat exists to individual's safety as perceived by staff,
                       although person has not requested admission; referral of the necessary information
                       will be forwarded to the UDC/DHO for appropriate hearing.

```
_____ (e) Is pending transfer or is in holdover status during transfer.
_____ (f) Is pending security concerns/Captain's review/Psych review/MEDICAL CLEARANCE
_____ (g) Is terminating confinement in Disciplinary Segregation and has been ordered into
              Administrative Detention by the Warden's designee.
```

It is this officer's decision based on all the circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution because*

YOU ARE BEING PLACED ON ADMINISTRATIVE DETENTION PENDING INVESTIGATION OF AN ASSAULT ON UNIT H. YOU WILL BE NOTIFIED OF ANY CHANGES TO YOUR STATUS.

Therefore, the above named inmate is to be placed in Administrative Detention until further notice. The inmate received a copy of this Order on (date/time) 03/27/08 8:30 PM

Staff Witness Signature/Printed Name  LIEUTENANT S. MILLER, Date  3/27/08

*In the case of DHO action, reference to that order is sufficient. In other cases, the officer will make an independent review and decision, which is documented here.

Record Copy - Inmate Concerned (not necessary if placement is a result of holdover status); Copy - Captain; Copy - Unit Manager; Copy - Operation Supervisor - Administrative Detention Unit; Copy - Central File

(This form may be replicated via WP)                        Replaces BP 308(52) of JAN 88

§ 123                                          60 Am Jur 2d

the conditions and restrictions of confinement for pretrial detainees charged with crimes but not yet convicted. The proper inquiry is whether the conditions or restrictions of detention amount to punishment of the detainee or otherwise violate the Constitution.[1] Not every disability or loss of freedom of choice or privacy imposed during pretrial detention amounts to punishment. The detention need not be limited solely to that necessary to ensure the detainee's presence at trial, but may reflect legitimate interests in the need to manage the detention facility and maintain jail security and order, even if the resulting restrictions are discomforting and would not be experienced by one released while awaiting trial.[2]

The due process rights of a detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner,[3] thus holding detainee in abusive conditions dangerous to the detainee's health is unconstitutional and may support a civil rights claim.[4] Under the reasonable relationship test which applies to conditions of confinement of a pretrial detainees, a due process violation exists only if the court finds that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective.[5] Restrictions reasonably related to legitimate prison objective, other than punishment, are valid.[6] De minimis impositions do not implicate constitutional concerns.[7]

§ 124  Punitive confinement prohibited

Research References

West's Key Number Digest, Prisons ←→ 459, 12, 13.5

While a sentenced inmate may be punished in any fashion not cruel and unusual, the Due Process Clause forbids punishment of a person held in custody awaiting trial.[1] Therefore, the confinement of pretrial detainees in a prison maintained primarily for the purpose of punishment of convicted persons, under conditions more burdensome than those imposed on the general population of convicted felons, amounts to punishment, depriving the

[Section 123]

[1]Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 1979.

[2]Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 1979.

[3]Weyant v. Okst, 101 F.3d 845, 35 Fed. R. Serv. 3d 1448, 1996 FED App. 0368P (6th Cir. 1996); Cranston v. Superior Court, 39 Cal. 3d 423, 216 Cal. Rptr. 691, 703 P.2d 1 1985.

[Section 124]

[1]Bass v. Rutherford, 466 U.S. 500, 104 S. Ct. 3227, 82 L. Ed. 2d 338 1984 recognizing rule); Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 1979; Cooper v. Dyke, 814 F.2d 941 4th Cir. 1987; Campbell v. Cauthron, 623 F.2d 503 5th Cir. 1980.

[2]Lucas v. Sheriff of DuPage County, Ill. 47 F. Supp. 2d 943 N.D. Ill. 1999.

[3]Scott v. Moore, 114 F.3d 51 5th Cir. 1997.

[4]Smiełowski v. Jackson County Public Defenders Office, 87 F.3d 1366 6th Cir. 1996, reh'g en banc granted, (Mar. 14, 1996) en opinion vacated on rehearing on other grounds, 79 F.3d 478 5th Cir. 1996; Marler v. Tyson, 845 F.2d 1451 7th Cir. 1988.

[5]Santa v. Copeland, 67 F.3d 265 4th Cir. 1996.

[6]Kramer v. Livingston Police Dept., 83 F.3d 1139 10th Cir. 1996; Matchev v. Turner, 377 F.3d 421 5th Cir. 1993.

980

---

§ 126                                         § 126

[PENAL AND CORRECTIONAL ETC.]

pretrial detainees of liberty without due process of law.[2] The use of excessive force against a pretrial detainee violates the detainee's rights,[3] but confining detainee to small space with limited facilities, if done for legitimate safety concerns and not punishment, are valid.[4] Since pretrial detainees are presumed innocent and may not be punished, requiring pretrial detainee to work or be placed in administrative segregation is impermissible punishment.[5]

## B. PARTICULAR RIGHTS AND CONDITIONS

§ 125  Activities, programs, or recreation

Research References

West's Key Number Digest, Prisons ←→ 4-50, 12, 13.5

Penal and Correctional Prison Conditions, 24 Am. Jur. Proof of Facts 2d 467

Pretrial detainees should be allowed to spend significant periods of each day out of their cells and some activities or programs should be regularly available to them in their time out of cells, except where individual circumstances show the need for more restrictive confinement.[1] Detainees may be allowed to become trustees and engage in work projects, but where state law so provides there needs to be an arrangement for the payment of wages.[2]

§ 126  Detainees' mail or correspondence

Research References

West's Key Number Digest, Prisons ←→ 419

The First Amendment rights of those who correspond with pretrial detain-

[Section 125]

[1]Dorsey v. St. Joseph County Jail Officials, 98 F.3d 1527 7th Cir. 1996; Ferguson v. Cape Girardeau County, 88 F.3d 647 8th Cir. 1996.

[2]Lock v. Jenkins, 641 F.2d 488 7th Cir. 1981.

[Section 126]

[1]Lock v. Jenkins, 641 F.2d 488 7th Cir. 1981.

[2]Brooks v. George County, Miss., 84 F.3d 157 5th Cir. 1996.

981

§ 126                                                          60 Am Jur 2d

ees, or of pretrial detainees themselves, are similar to the rights attending correspondence with convicted prisoners, and where the state asserts the right to monitor the mail, monitoring is permissible as necessary to protect the government interest in prison security.¹ The monitoring of inmate mail is permissible as a necessary incident of an appropriate penal censorship function,² and legal mail opened and read, but not censored, may not rise to the level of a constitutional violation.³ However, allegations of censorship of pretrial detainees' mail in violation of the First Amendment are not necessarily judged by the standards applicable to convicted prisoners,⁴ and in some circumstances the reading of a pretrial detainee's mail may violate the detainee's constitutional rights.⁵

### § 127   Searches

West's Key Number Digest, Prisons ⚿45, 121

Pretrial detainees do not have a constitutional right under the Fourth Amendment or under the Due Process Clause of the Fourteenth Amendment to observe shakedown searches of their cells by prison officials.¹

The exposed visual cavity search of pretrial detainees as a part of a strip search after every contact visit with a person from outside the institution, predicated on security interests and undertaken without probable cause, is not unreasonable under the Fourth Amendment.² Likewise, a strip search of unconvicted detainees by prison personnel does not violate the Fourth Amendment, where the search and seizure relates to the needs of prison security.³ However, in some circumstances, strip or cavity searches may be unreasonable and violate detainee's constitutional rights.⁴

### § 128   Medical care

West's Key Number Digest, Prisons ⚿173;
Prisoner's right to free medical treatment, 65 A.L.R. 5d 111
Federal constitutional and statutory claims by HIV positive inmates as to medical treatment or conditions of confinement, 152 A.L.R. Fed 15.

[Section 126]
¹Pepys v. Saugus, 700 F.2d 364, 1st Cir. 1975.
²Zemel v. Sangster, 570 F.2d 364, 1st Cir. 1978.
³Walker v. Navarro County Jail, 4 F.3d 410, 5th Cir. 1993.
⁴Jacinto of San Diego County Jail, 835 F.3d 35, 9th Cir. 1975.
⁵Vigneault v. Shalala, 425 F. Supp. 676, W.D. Wis. 1977; State v. Elledge, 266 S.C. 491, 225 S.E.2d 866, 1976.

As to mail correspondence of inmates generally, see §§ 87 to 91.

[Section 127]
¹Block v. Rutherford, 468 U.S. 576, 104 S. Ct. 3227, 82 L. Ed. 2d 438, Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447, 1979; Mitchell v. Dupnik, 75 F.3d 517, 9th Cir. 1996.
²Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393; Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447, 1979.
³Harris v. Miller, 818 F.2d 1525, 9th Cir. 1987; Gumpl v. Mucci, 202 F. Supp. 356, S.D.N.Y. 1975.
⁴Weber v. Dell, 804 F.2d 796, 2d Cir. 1986.

952

---

PENAL AND CORRECTIONAL ETC.                                                   § 129

Inadequate or improper medical care, Prisoners' Rights Litigation, 22 Am. Jur. Trials § 24

A pretrial detainee's due process right to be free from punishment is violated when a jailer fails to promptly and reasonably procure competent medical aid, when the pretrial detainee suffers a serious illness or injury while confined.¹ Deliberate indifference in denying treatment to a pretrial detainee may support a civil rights violation claim,² particularly where officers deliberately ignore a medical warning by a physician-relative.³ The failure to show deliberate indifference supports a finding that the detainee's constitutional rights were not violated.⁴

Expert testimony may be required to support claim that a medical condition was serious where the seriousness of particular condition may not be apparent to a lay person.⁵ An episodic act or omission of a state jail official does not violate a pretrial detainee's due process right to medical care or protection from suicide unless the official acted or failed to act with subjective, deliberate indifference to the detainee's rights.⁶ A mere difference of opinion between a prison's medical staff and the inmate, as to a diagnosis or treatment, does not support a claim of cruel and unusual punishment.⁷

Findings of fact supporting an order allowing the involuntary administration of antipsychotic medications to a pretrial detainee must be supported by clear and convincing evidence to satisfy the detainee's right to procedural due process.⁸

### § 129   Protection

West's Key Number Digest, Prisons ⚿17-40

Pretrial detainees have a right to be reasonably protected from acts of violence by other prisoners,¹ or by penal facility's officers.² The necessary protection of pretrial detainees extends beyond a prohibition of merely cruel

[Section 128]
¹Sanchez v. Lawson, 872 F.2d 76, 9th Cir. 1989; Murphy v. Walker, 51 F.3d 714, 7th Cir. 1995.
²Payne v. Churchich, 161 F.3d 1030, 7th Cir. 1998.
³Roper v. Grayson, 81 F.3d 124, 10th Cir. 1996.
⁴Carnell v. Grimm, 74 F.3d 977, 9th Cir. 1996; Ferris v. County of Kennebec, 44 F. Supp. 2d 62, D. Me. 1999.
⁵Martin v. Board of County Comm'rs of County of Pueblo, 909 F.2d 402, 10th Cir. 1990.

⁶Baughn v. Korakowski, 80 F.3d 868, 9th Cir. 1996.
⁷Harris v. Thigpen, 941 F.2d 1495, 11th Cir. 1991; Bailey v. Gardebring, 940 F.2d 1150, 8th Cir. 1991.
⁸State v. Scott, 91 Wash. App. 78, Wash. Ct. App. Div. 1, 1998.

[Section 129]
¹Garcia v. Harris County Police Dept, 815 F.3d 451, 5th Cir. Sept. 25, 1987; Scott v. Moore, 114 F.3d 51, 5th Cir. 1997, Sexual assault by jailer; Dorsey v. St. Joseph County Jail Officers, 98 F.3d 1527, 7th Cir. 1996.

953

CHICAGO TRIBUNE · **METRO** · SECTION 2 · FRIDAY, MARCH 14, 2008   **3**

# FBI is probing death of inmate

### Indiana man died of injuries in Chicago

**By Robert Mitchum**
TRIBUNE REPORTER

Jason Katz was halfway through his 9-month prison sentence at the Metropolitan Correctional Center, and he could hardly wait for his term to finish so that he could start a new life, his mother said.

But what authorities describe as an altercation Tuesday night in the Chicago jail led to Katz, 32, being severely beaten. He suffered head and spine injuries that led to his death Wednesday morning, authorities said.

Katz's death was officially ruled a homicide Thursday by the Cook County medical examiner's office. Because the death occurred in a federal facility, the FBI was investigating the incident on Thursday night, and authorities refused to release details about what led to the Indiana man's death.

Katz's mother, Diane, who lives in South Bend, described her son as a wonderful father and a man skilled with his hands who did work rehabbing and painting houses, cars and boats. He had two children, ages 2 and 6, and a 14-year-old stepdaughter with his wife of seven years, Shannon.

Diane Katz said her son also occasionally worked at gun shows, where police said Katz, who was living in South Bend, sold a gun "off the books" in 2007 that was later linked to the shooting of a police officer.

Katz pleaded guilty in October to illegal sale of a firearm by a licensed dealer, and he was sentenced to 9 months in jail.

"He made a mistake," Diane Katz said. "A costly mistake that cost him his life."

"Frankly, I think the judge could have given him probation and community service," she said. "He was a first-time offender. He wasn't a thug like you normally find in prison. But what happened was the judge sent him to his death."

Diane Katz said her son had no major problems during his time at Metropolitan Correctional Center, and she could not understand why anyone would have attacked him. She said authorities told her words and punches were exchanged between Katz and his attacker, but said her son had no marks on his hands when she and his wife saw him Tuesday night in the intensive care unit of Northwestern Memorial Hospital.

"I want answers. I want facts," Katz said. "There are reports and videos, and I want some answers."

Although no charges had been filed Thursday night, Katz said prison officials told her Tuesday that they knew who was responsible. She said she hopes that person is given the maximum punishment possible, despite already being behind bars.

"I want him to suffer, as [my son's] children and wife and I will," Katz said.

rmitchum@tribune.com

---

'From the first I heard of this, I thought, "If Desiree Britt had been Alonzo de la Torre, he'd be locked up."'

*—Robert Long, an attorney representing the family of Alonzo de la Torre in its civil suit alleging racial inequality in the handling of the collision that killed de la Torre*